HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MONICA JONES, an individual,

        Plaintiff,

    v.

CITY OF SEATTLE and SEATTLE CITY
LIGHT,

        Defendants.

Case No. 2:22-cv-01668-RAJ

**ORDER**

## I.    INTRODUCTION

This matter comes before the Court on Defendants City of Seattle and Seattle City Light's ("the City") motion for summary judgment, Dkt. # 44, and motion to exclude witness testimony. Dkt. # 47. Plaintiff Monica Jones ("Ms. Jones" or "Plaintiff") opposes the City's motion, Dkt. # 44, and did not file an opposition to the City's motion to exclude. Plaintiff worked at Seattle City Light for nearly twenty years until the City let Plaintiff go due to her non-compliance with the City's COVID-19 vaccination requirements. The City seeks dismissal of the entirety of Plaintiff's employment discrimination claims related to her separation from Seattle City Light. Having reviewed the memoranda, declarations, exhibits, and the record herein, the Court **GRANTS** the City's motion for summary judgment.

ORDER – 1

## II.    FACTUAL BACKGROUND

Seattle City Light is a department of the City of Seattle and a publicly owned utility that provides electrical services to residential and business customers in the Seattle area. Dkt. # 44 (Declaration of Kathryn Schultz ISO Defendants' Motion for Summary Judgment) ¶ 3. Plaintiff began working at Seattle City Light on July 3, 2022 as a Customer Service Representative. Dkt. # 50 (Declaration of Monica Jones in Response to Defendants' Motion for Summary Judgment) at 2. She worked her way up to positions as a Senior Customer Representative in July 2011 and a Credit Collections Supervisor in March 2016. Dkt. # 46 (Declaration of Lauren Parris Watts ISO Defendants' Motion for Summary Judgment), Ex. A ("Jones Dep. 1") at 37:4-13; Dkt. # 50 at 2. Plaintiff held her position as a Credit Collections Supervisor until she was let go by the City in February 2022. *Id.,* Ex. A at 37:15-16.

According to the City, Plaintiff, as a Credit Collections Supervisor, was responsible for managing the customer service desk at Seattle City Light's offices in downtown Seattle. Dkt. # 45 ¶ 4. She supervised seven employees at City Light's office and four "Office/Maintenance Aide" employees who did not staff the customer service desk. *Id.* ¶ 4 n. 1. Further, according to an October 2021 memorandum from the City to Plaintiff, Plaintiff's role required "in-person interaction, guidance, and collaboration with her direct reports" and her in-person responsibilities included customer-facing interaction and serving as part of an escalation path for customer issues and troubleshooting. Dkt. # 45, Ex. A.

Due to the COVID-19 pandemic, Washington Governor Jay Inslee declared a state of emergency in February 2020, *see Slidewaters LLC v. Washington State Department of Labor and Industries*, 4 F.4th 747, 753 (9th Cir. 2021), and issued several public health and safety proclamations thereafter. Starting in March 2020, Plaintiff mostly worked remotely, except for a few voluntary in-person arrivals per week. Dkt. # 50 at 2. In August 2021, Seattle Mayor Jenny Durkan announced that all City employees were

required to be vaccinated for COVID-19 as a condition of employment by October 18. *Id.*; Dkt. # 45, Ex. B. The City, in an email from Seattle's People and Culture Officer DaVonna Johnson, stated that there would be an exemption process for employees with religious and medical reasons, and employees who request and are verified to have a medical or religious exemption would be required to undergo weekly COVID-19 testing and be required to distance. *Id.* Around October 4, 2021, Plaintiff submitted a request for a religious exemption from the vaccine requirement. Dkt. # 46, Ex. B ("Jones Dep. 2") 109:11-23. Plaintiff requested that she be accommodated by masking and weekly testing. Dkt. # 50 at 3.

On October 15, 2021, ADA/Leave Coordinator Corina Matson responded to Plaintiff's request via email, explaining that the next step was to engage in the interactive accommodations process. Dkt. # 45, Ex. C. An October 15, 2021 memorandum from ADA/Leave Specialist Tara Ritchey to Plaintiff titled "Acknowledgement of Request for Reasonable Accommodation based on Religious Exemption" stated that Plaintiff's religious exemption had been approved and that they were to begin the interactive process to determine whether an effective accommodation existed that would allow her to continue performing the essential functions of her job. *Id.*, Ex. D. The memo further explained that the City would look for a reasonable accommodation that would enable Plaintiff to perform her job without compromising workplace safety or imposing more than a minimal cost or burden on other employees or overall operations. *Id.* In October and November, Plaintiff's management team met to discuss Plaintiff's role and potential accommodations. *Id.*, Ex. E.

On October 26, 2021, the City sent a memo to Plaintiff titled "Reasonable Accommodation Unavailable for Religious Exemption." Dkt. # 45, Ex. A. The City indicated that, after evaluating Plaintiff's request and making an individualized assessment, it was unable to identify a reasonable accommodation that would not result in an undue hardship. The City stated that Plaintiff's position required onsite presence at her

ORDER – 3

reporting station, and, although many of her duties could be completed via telework, her customer-facing interactions would include customer escalation and troubleshooting. *Id.* at 1. Further, her position could potentially require her to report onsite for access to technical resources or in support of the Credit & Collections team. *Id.*

The City stated that masking and/or periodic testing would not be an effective accommodation because employees could potentially be contagious prior to symptom onset or asymptomatic and unknowingly spread the virus. *Id.* And although masking was a "key element" in the City's COVID-19 response, the City did not find masking, on its own, to be sufficient to adequately minimize the risk of spread. *Id.* at 2. Quoting the Occupational Safety and Health Administration, the City stated that "vaccination is the key element in a multi-layered approach to protect workers." *Id.* Due to Plaintiff's job duties and the risk of unvaccinated individuals contracting the Delta variant and spreading it to others, the City believed that it was unable to identify a reasonable accommodation. *Id.*

Plaintiff met with Ms. Ritchey on November 9, 2021, and at that meeting, Plaintiff and Ms. Ritchey expressed differing views on whether Plaintiff needed to appear on site to complete her job responsibilities. Jones Dep. 2 at 145:4-14. Ms. Ritchey believed that Plaintiff's supervisory role could not be completed remotely, while Plaintiff believed that no one was handling supervisory duties, including Plaintiff's counterpart. *Id.* at 154:15-155:8. On November 17, Ms. Ritchey sent a follow up email recapping her meeting with Plaintiff and reiterating the reasons why the City believed it could not provide a reasonable accommodation to Plaintiff. Dkt. # 45, Ex. G. The City provided Plaintiff with the following options moving forward: (a) comply with the vaccine requirement by providing proof of her first dose within two weeks; (b) retire, if eligible; (c) not comply by voluntarily resigning; and (d) not comply by non-disciplinary separation after being placed on administrative leave and provided an opportunity to have a hearing. *Id.* at 2. The City asked Plaintiff to provide a response by December 1, 2021, and if Plaintiff made

ORDER – 4

no choice, she would default to option (d). *Id.* Plaintiff responded via email on November 23 and stated that she believed that the process was discriminatory, not factual, and personally targeted her. Dkt. # 46, Ex. H. Plaintiff stated that she chose option (e)—to discuss her objections to the process with Mayor Elect Bruce Harrell. *Id.* Plaintiff stated that there had been no discussion amongst her management team about the need to be in the office five days per week, that this expectation had not been communicated to her, and that division leadership communicated that the team's long-term goal was to continue teleworking. *Id.*

On December 3, 2021, Plaintiff was placed on paid administrative leave due to non-compliance with the vaccine requirement. Dkt. # 46, Ex. I. On January 26, 2022, Plaintiff met with City Light's General Manager/CEO Debra Smith, in a meeting that Plaintiff described as "dry" and a "waste of time." Jones Dep. 2 at 181:25-183:9. Plaintiff states that she was not asked for any information about what she could and could not do, but ultimately, "it wouldn't have mattered what [Plaintiff] said," because Ms. Smith had already made up her mind. *Id.* In a February 7 letter, Ms. Smith notified Plaintiff of the final decision to end Plaintiff's employment with City Light effective that day, due to non-compliance. Dkt. # 46, Ex. J. The letter provided information on appeals for union represented members and civil service employees. *Id.*

Plaintiff then followed up with her Union Representative in order to file a grievance. Dkt. # 51, Ex. D, E. On March 9, 2022, Plaintiff's union filed a grievance on her behalf and Plaintiff attended a "Step 2" meeting on March 28, 2022. *Id.* Plaintiff's union then filed a "Step 3" grievance on May 25, 2022. *Id.* Ultimately, both grievance attempts were unsuccessful. *Id.* Plaintiff filed a complaint with the EEOC on August 5, 2022, and received a right to sue letter later that month. Dkt. # 1 at 2; Dkt. # 51 at 8. Plaintiff also filed a charge alleging discrimination with the Seattle Office for Civil Rights and was assigned an investigator. Dkt. # 51, Ex. F. However, there was a delay in meeting with the investigator, and Plaintiff then chose to seek legal representation to fight

ORDER – 5

her termination by the City. *Id.* at 8.

In November 2022, Plaintiff filed suit against the City, alleging that Defendants had pre-determined not to accommodate Plaintiff's religious exemption due to bias on the part of Plaintiff's then-boss Luis Amezcua and Plaintiff's race as an African American. Dkt. # 1 at 4-5. Plaintiff further alleged that Defendants had no intention of granting religious exemptions on a larger level. *Id.* Plaintiff brought eleven claims brought against the City, which include: including failure to accommodate, disparate impact due to religion, religious discrimination, and racial discrimination under the Washington Law Against Discrimination (WLAD), tort claims for religious and racial discrimination, age discrimination under the Age Discrimination in Employment Act (ADEA) and WLAD, wage theft, and violations of the Washington constitution and Plaintiff's right to be free from arbitrary and capricious action. Dkt. # 1. In her opposition briefing, Plaintiff stipulated to the dismissal of her wage theft and arbitrary and capricious action claims. Dkt. # 49 at 19, 21.

As part of discovery, Defendants served Plaintiff with Requests for Admissions on July 20, 2023. Dkt. # 46, Ex. K. Plaintiff was asked to admit or deny the following:

- RFA No. 5: Admit that while You were employed by Defendant City as a Credit and Collections Supervisor, Your position required on-site presence at your reporting station, the Seattle Municipal Tower.

- RFA No. 7: Admit that during the November 7, 2021 meeting with Defendant City, there was discussion of the essential functions of Your position, including in-person interaction with seven employees that were your direct reports.

*Id.* at 3. Plaintiff's responses were due on August 21, 2023, but not served until August 29, 2023. *Id.*, Ex. M. Emails between the parties indicate that there was a misunderstanding between counsel such that Plaintiff's counsel believed that the parties agreed on a global extension of time to submit discovery responses, while Defendants

ORDER – 6

agreed only to an extension for Plaintiff to serve responses to Defendants' Interrogatories and Requests for Production. *Id.* Plaintiff argues that, pursuant to Federal Rule 36(b), all matters should be considered admitted and conclusively established. Dkt. # 44 at 6-7 (citing Fed. R. Civ. P. 36(b)). Counsel's correspondence reflects that the parties discussed an extension to respond to Interrogatories and Requests for Production, but not Requests for Admission. Dkt. # 46, Ex. L. Plaintiff did not timely respond, and in the absence of a written answer or objection within 30 days after service, a matter is admitted. Fed. R. Civ. P. 36(a)(3). Plaintiff did not address this matter in her opposition or seek to withdraw or amend the admissions. Fed. R. Civ. P. 36(b). Therefore, the matters admitted are conclusively established. *Id.*

With regard to her religious affiliation, Plaintiff identified as a Christian, without a particular denomination. Jones Dep. 2 115:11-12. Plaintiff stated at her deposition that she drew guidance from the Bible, which states that she should "follow no man." *Id.* at 118:23-119:2. Further, Plaintiff stated that she believed that the vaccine is connected to the "mark of the beast," due to the way the vaccine was tested and rolled out, and the varying statements of members of the medical community. *Id.* at 119:12-21. In her first[1] Declaration in opposition to Defendants' motion, Plaintiff explained that her religious beliefs include her knowledge of her natural immunity and asserted that the COVID-19 vaccine contains fetal cell lines derived from elective abortions. Dkt. # 50 at 2. Plaintiff further states that the thought of injecting herself with the vaccine causes her great

---

[1] Plaintiff filed two declarations in opposition to Defendants' motion. The first declaration was filed on May 20, 2024, and a second "Amended" declaration was filed on May 24, 2024, three days after the May 21, 2024 deadline for opposition papers to be filed. Dkt. ## 50, 51; LCR 7(d)(4). The City requests that this Court strike Plaintiff's amended declaration as untimely. This Court could strike the amended declaration because Plaintiff failed to set forth in a praecipe why the amended declaration was not included in the original filing in accordance with LCR 7(m). *See Williams v. Columbia Debt Recovery, LLC*, 579 F. Supp. 3d 1203, 1213 (W.D. Wash. 2022). However, the Court notes that Plaintiff's original declaration includes no related exhibits, while the amended declaration includes several exhibits. *Compare* Dkt. # 50 *with* Dkt. # 51. In the interest of resolving this matter on the merits, the Court will consider both declarations filed by Plaintiff.

ORDER – 7

discomfort and that her faith will not allow her to participate in the murder of unborn children. *Id.* In a May 22, 2024 deposition, Plaintiff's mother Patricia Pumphrey stated that Plaintiff is currently Buddhist. Dkt. # 54, Ex. P (Pumphrey Dep.) 2:29 21- 2:30 23. Plaintiff does not address her mother's assertion that Plaintiff is Buddhist in her amended declaration, which was filed after Ms. Pumphrey's deposition, on May 24, 2024.

### III.   LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

"As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." *Chuang v. Univ. of Cal. Davis, Bd. of Tr.*, 225 F.3d 1115, 1124 (9th Cir. 2000). However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also,*

ORDER – 8

*White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. V. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

## IV.   ANALYSIS

### A.) Religious Discrimination Claims (First, Second, and Third Causes of Action)

Plaintiff brings claims for religious discrimination under the Washington Law Against Discrimination (WLAD). Dkt. # 1 at 7-8. Plaintiff alleges that Defendants failed to accommodate her as required by the WLAD and that her termination violates public policy precepts that prohibit employment discrimination. *Id.* Plaintiff further alleges that Defendants' COVID-19 vaccine requirement, although facially neutral, falls more harshly upon those within protected religious classes. *Id.* The City seeks dismissal of Plaintiff's religious discrimination claims.

#### 1.) Failure to Accommodate

The WLAD implies a requirement to reasonably accommodate religious practices. *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 496-497, 325 P.3d 193 (2014). A plaintiff establishes a prima facie claim of failure to accommodate religious practices by showing that: (1) he or she had a bona fide religious belief, the practice of which conflicted with employment duties; (2) he or she informed the employer of the beliefs and the conflict; and (3) the employer responded by subjecting the employee to threatened or actual

ORDER – 9

discriminatory treatment. *Kumar*, 180 Wn.2d at 501 (citing *Porter v. City of Chicago*, 700 F.3d 944 (7th Cir. 2012) and *Lawson v. Wash.*, 296 F.3d 799, 804 (9th Cir. 2002)). Washington law uses the same burden shifting test of Title VII to determine whether an employer has failed to accommodate an employee's religious beliefs. *Id.* at 491 ("Washington courts…look to federal caselaw interpreting [Title VII, the Americans with Disabilities Act, and the Age Discrimination in Employment Act] to guide our interpretation of the WLAD.") The term "religion" is defined under Title VII to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

If a plaintiff establishes a prima facie case of failure to accommodate based on religious discrimination, the burden shifts to the employer to "establish that it initiated good faith efforts to accommodate the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Lawson*, 296 F.3d at 804. An "undue hardship" results when an employer is required to bear more than a *de minimis* cost. *Kumar*, 180 Wn.2d at 502. Further, an "undue hardship" may implicate concerns other than those of the financial sort. Additionally, the "reasonable accommodation" need not be the precise accommodation requested by the employee, even if it would cause no undue hardship to the employer. *Id.*

Here, Plaintiff has failed to establish a prima facie case of failure to accommodate. As to the first prong, Plaintiff fails to establish a bona fide religious belief. Although Plaintiff states in her complaint and opposition that she possesses bona fide religious beliefs, she fails to establish what exactly her belief system is. "[A]n employee's complaint must provide sufficient information about the nature of the employee's beliefs in order to state a claim for Title VII religious discrimination." *Bartholomew v. Washington*, No. 3:23-cv-05209-DGE, 2024 WL 1426308, at *4 (W.D. Wash. Mar. 26, 2024) (citing *Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-03360-JMG, 2023 WL 362392, at *6 (E.D. Pa. Jan. 23, 2023)). Here, Plaintiff stated that she was a Christian, Jones Dep. 2 at 115:12, while her mother stated that Plaintiff was in fact

ORDER – 10

1   Buddhist. Pumphrey Dep. at 2:29 21- 2:30 23. Further, Plaintiff explained that her

2   religious beliefs "include the knowledge of natural immunity." Dkt. # 50 at 6. However,

3   "courts have been reluctant to recognize 'natural immunity' beliefs as religious rather

4   than secular." *Bartholomew* at *5 (collecting cases). Plaintiff's other explanation in her

5   amended declaration that her religious belief includes "not being inoculated with fetal

6   derived cells, especially by an Emergency Use Authorization of the following drug

7   companies: Johnson & Johnson, Moderna & Pfizer Vaccinations[,]" provides no further

8   context as to her religious, as opposed to secular, beliefs. Dkt. # 51 at 3. This court need

9   not take "conclusory assertions of violations of religious beliefs at face value." *Bolden-*

10  *Hardge v. Office of California State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023).

11  Especially here, when the testimony provided by Plaintiff and her mother is in conflict

12  and does not illuminate Plaintiff's bona fide religious belief. Further, discrimination law

13  "does not protect medical, economic, political, or social preferences." *Kather v. Asante*

14  *Health System*, No. 1:22-cv-01842-MC, 2023 WL 48655533, at * 3 (D. Or. July 28,

15  2023) (finding that former employees of a hospital who objected to vaccination on the

16  basis of the vaccine being developed with aborted fetal cell lines, a desire to trust in the

17  Lord over "the solutions of men," a belief that the hospital's actions were "blasphemy"

18  and "satanic," and general objections to the mandate failed to state a prima facie failure-

19  to-accommodate claim). "It is quite clear [Plaintiff] had scientific and political objections

20  to the vaccine that [she has] attempted to 'fit' to [her] religious beliefs in order to

21  potentially qualify for a religious exemption." *Moore v. Effectual Inc.*, 3:23-cv-05210-

22  DGE, 2024 WL 1091689, at *9 (W.D. Wash. Mar. 13, 2024). Because of this,

23  Defendants' request for summary judgment on Plaintiff's failure to accommodate claim

24  is **GRANTED**.

25          //

26          //

27          //

28  ORDER – 11

1

*2.) Disparate Treatment*

To prove a prima facie case of discrimination based on disparate treatment, Plaintiff must show: (1) she was a member of a protected class; (2) she was qualified for her job; (3) she was subjected to an adverse employment action; and (4) similarly situated employees not in their protected class received more favorable treatment. *Moran v. Selig*, 447 F.3d 748, 753 (2006); *see also Marin v. King County*, 194 Wn. App. 795, 808, 378 P.3d 203 (2016) (plaintiff must show membership in a protected class, a tangible adverse employment action, that the action occurred under circumstances that raise a reasonable inference of unlawful discrimination, and that plaintiff was doing satisfactory work). If plaintiff makes a prima facie showing, the burden shifts to the employer to show "legitimate, nondiscriminatory reasons" for its adverse employment action. *Marin*, 194 Wn. App. at 809. If the employer produces this evidence, the burden shifts again to the plaintiff to show that the reasons are pretextual. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). If there is sufficient evidence of pretext, the case must go to a jury. *Salas v. Indep. Elec. Contractors Inc.*, No. 11-1748 RAJ, 2013 WL 1898249, at *6 (W.D. Wash. May 7, 2013).

"Direct 'smoking gun' evidence of discriminatory animus is rare, since 'there will seldom be eyewitness testimony as to the employer's mental process' and 'employers infrequently announce their bad motives orally or in writing.'" *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 179, 23 P.3d 440 (2001) (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478 (1983) and *deLile v. FMC Corp.*, 57 Wn. App. 79, 83, 786 P.2d 839 (1990)). At the summary judgment stage, where there is no evidence of discrimination, courts use the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

Here, Plaintiff fails to establish the first prong of a disparate treatment claim. *See* discussion *supra* Section IV(A)(1). Plaintiff also fails to establish the fourth prong of a prima facie case, because she does not identify a similarly situated non-Christian who

ORDER – 12

was treated more favorably. Plaintiff must demonstrate that the employees receiving more favorable treatment are similarly situated in all material respects; that is, they must have similar jobs and display similar conduct. *Weil v. Citizens Telcom Co., LLC*, 922 F.3d 993, 1004 (9th Cir. 2019); *see also Salas*, 2013 WL 1898249 at *8 (the "similarly situated" analysis is stringent). Plaintiff asserts that employees seeking medical exemptions (as opposed to religious exemptions) were treated differently. Dkt. # 49 at 12. In support of this contention, Plaintiff quotes an email from Deputy Mayor Tiffany Washington (that included someone named "Ms. Thompson") in which the Deputy Mayor allegedly stated that individuals with medical exemptions were to be prioritized. *Id.* But Plaintiff provides no citation, exhibit number, or link to this email, and the Court cannot locate it in the docket. Viewing the record in the light most favorable to Plaintiff, Ms. Jones fails to present evidence of a City Light employee in a customer-service facing supervisory role that declined vaccination and was allowed to telework as an accommodation. She alleges that a Caucasian employee named Rebecca Fitcher was allowed to continue working in the building while being unvaccinated, but Plaintiff fails to establish that she and Ms. Fitcher were similarly situated in all material respects, such as their roles, and Plaintiff does not indicate if Ms. Fitcher is non-Christian.[2] Dtk. # 51 at 7. Although the requisite level of proof required of a plaintiff at the summary judgment stage does not rise to the level of preponderance of the evidence, "the plaintiff must still produce evidence, not just pleadings or argument." *Weil*, 922 F.3d at 1003 (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)). Defendants' request for summary judgment as to Plaintiff's disparate treatment claim is **GRANTED.**

//

//

//

---

[2] Defendants state that Ms. Fitcher was a Customer Service Representative and provided a temporary telework accommodation during which she was not allowed to work in the building. Dkt. # 53 (Second Shultz Declaration) ¶ 3, 4.

ORDER – 13

1

2          *3.) Disparate Impact*

3              In her complaint, Plaintiff alleges that, although the City's vaccination policy is

4     facially neutral, it falls more harshly upon those within protected religious classes. Dkt. #

5     1 at 8. This appears to be the only disparate impact claim within the complaint. *See*

6     *generally* Dkt. # 1. However, in her brief, Plaintiff argues that she has established the

7     existence of a facially neutral employment practice that falls more harshly on African

8     Americans. Dkt. # 49 at 16.

9              To establish a prima face case of disparate impact under the WLAD, Plaintiff must

10    prove: (1) a facially neutral employment practice, (2) falls more harshly on a protected

11    class. *Oliver v. Pacific N.W. Bell Tel. Co., Inc.*, 106 Wn.2d 675, 679, 724 P.3d 1003

12    (1986). "Disparate impact … claims … prevent employers from adopting facially neutral

13    policies that create or perpetuate discriminatory effects." *Kumar*, 180 Wn.2d at 500.

14    "Generally, the standard of proof necessary to establish a disproportionate impact upon a

15    protected class is whether the plaintiff has produced evidence sufficient to justify an

16    inference that the employment practices complained of caused a substantial

17    disproportionate exclusionary impact on the protected class, other than by mere chance,"

18    and "the primary means of proving a substantial disproportionate impact on a protected

19    class is through the use of statistical evidence." *Oliver*, 106 Wn.2d at 681-82. "[T]he

20    statistical disparities must be 'sufficiently substantial that they raise … an inference of

21    causation." *Shutt v. Sandoz Crop Protection Corp.*, 944 F.2d 1431, 1433 (9th Cir. 1991).

22    Here, Plaintiff produces no evidence beyond her assertion that the City has a "habit of

23    allowing similarly situated white employees to remain employed whilst refusing the

24    COVID-19 vaccine." Dkt. #49 at 17.

25              Putting aside the discrepancy in Plaintiff's complaint and the argument contained

26    within her opposition, Plaintiff has not raised an issue of material fact for trial. Although

27    Plaintiff has identified a facially neutral employment practice, Plaintiff provides no

28    evidence, statistical or otherwise, beyond her own statements, that the practice caused the

ORDER – 14

termination of employees due to their religion or race. "Ultimately, all that [Plaintiff] has alleged so far is that [she] was terminated, and the Court cannot draw an inference of disparity from a single data point." *Lui v. Uber Tech. Inc.,* 551 F. Supp. 3d 988, 991 (N.D. Cal. 2021). Because Plaintiff "must actually prove the discriminatory impact at issue, rather than merely an inference of discriminatory impact," *Rose v. Wells Fargo & Co.*, 902 F.2d 117, 1421 (9th Cir. 1990), Defendants' request for summary judgment as to Plaintiff's disparate impact claim is **GRANTED**.

### B.) Race and Age Discrimination Claims (Fifth, Seventh, and Eighth Causes of Action)

Defendants seek dismissal of Plaintiff's claims of racial and age discrimination under state and federal law. Dkt. # 44 at 16. The WLAD prohibits employers from refusing to hire, discharging, or discriminating against any person in the terms and conditions of employment because of race and age. RCW 49.60.180. Further, the Age Discrimination in Employment Act (ADEA) states that it is unlawful for an employer to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of an individual's age. 29 U.S.C. § 623(a)(1).

To establish a prima facie case of disparate treatment due to race under the WLAD, Plaintiff must establish that the employer "simply treats some people less favorably than others because of their race." *Johnson v. Dep't of Social and Health Servs.*, 80 Wn. App. 212, 226, 907 P.2d 1223 (1996). The *McDonnell Douglas* burden shifting framework applies. *See Worthy v. ITT Technical Institute*, No. C09-0444JLR, 2010 WL 1780250, at *5 (W.D. Wash. Apr. 30, 2010). Here, Plaintiff's racial discrimination claim fails because she has not presented evidence showing that she was treated less favorably than similarly-situated nonprotected employees beyond simply asserting that white employees were allowed to telecommute and identifying the City's "habit of allowing … white employees to remain employed whilst refusing the COVID-

ORDER – 15

19 vaccine." Dkt. # 49 at 17-18. Plaintiff pointed to Ms. Fitcher as a comparator, but she is not "similarly situated" to Plaintiff, because she was not a supervisor like Plaintiff. Dkt. # 53 ¶ 3.

WLAD age discrimination and ADEA claims are similarly analyzed under the *McDonnell Douglas* burden shifting framework, and Plaintiffs age discrimination claims similarly fail. A prima facie case of age discrimination requires that plaintiffs demonstrate that they were: 1) members of the protected class (at least forty years of age); (2) performing their jobs satisfactorily; (3) discharged; and (4) replaced by substantially younger employees with equal or inferior qualifications. *Robinson v. Pierce County*, 539 F. Supp. 2d 1316, 1326 (W.D. Wash. 2008). Plaintiff makes no attempt to establish a prima facie case of disparate treatment due to age discrimination. As to Plaintiff's hostile work environment claim, Plaintiff must show offensive contact that is unwelcome, that occurs because of age, that affects the conditions of employment, and that can be imputed to the employer. *Id.* at 1329; *see also Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104 (9th Cir. 2005) (acknowledging existence of a hostile work environment claim under ADEA). Plaintiff's declarations and opposition do not address the hostile work environment cause of action raised in Plaintiff's complaint beyond describing the process of seeking a religious accommodation as an "absolute nightmare" and "disheartening." Despite not being required to scour the record in search of a genuine issue of material fact, this Court has done so, and has found a complete absence of evidence in support of these claims. Plaintiff must "present specific, significant probative evidence, not merely 'some metaphysical doubt'" as to her claims, *Robinson*, 539 F.Supp. at 1324 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)), and has failed to do so. The City's request for summary judgment as to Plaintiff's race and age discrimination claims is **GRANTED**.

ORDER – 16

1

### C.) Public Policy Claims (Fourth and Sixth Causes of Action)

2          The City argues that Plaintiff's public policy tort claims must be dismissed.

3    Plaintiff brings public policy tort claims for religious discrimination and racial

4    discrimination based on a theory of wrongful discharge. Dkt. # 1 at 8-10. Citing *Martin v.*

5    *Gonzaga Univ.*, 191 Wn.2d 712, 425 P.3d 837 (2018), the City argues that Plaintiffs

6    claims must be dismissed because the doctrine is a narrow exception to the at-will

7    employment doctrine and other applicable laws provide adequate remedies. Dkt. # 44 at

8    17-18. Plaintiff appears to argue that she was discharged for exercising a legal right,

9    asserting that the City refused to allow an African American over the age of 50 to work

10   from home while allowing similarly situated white and younger employees to work from

11   home in order to avoid taking the COVID-19 vaccine. Dkt. # 49 at 18-19. This Court

12   does not find Plaintiff's argument persuasive.

13          "The tort for wrongful discharge in violation of public policy has generally been

14   limited to four scenarios: (1) where employees are fired for refusing to commit an illegal

15   act; (2) where employees are fired for performing a public duty or obligation, such as

16   serving jury duty; (3) where employees are fired for exercising a legal right or privilege,

17   such as filing workers' compensation claims; and (4) where employees are fired in

18   retaliation for reporting employer misconduct, i.e., whistle-blowing." *Martin*, 191 Wn.2d

19   at 723. To succeed on such a claim, a plaintiff must fully satisfy a four-factor test by

20   showing: (1) the existence of a clear public policy (the clarity element); (2) that

21   discouraging the conduct in which plaintiff engaged would jeopardize the public policy

22   (the jeopardy element): (3) that the public-policy-linked conduct caused the dismissal

23   (the causation element); (4) and that the defendant has not offered an overriding

24   justification for the dismissal (the absence of justification element). *Cudney v. ALSCO,*

25   *Inc.*, 172 Wn.2d 524, 529, 259 P.3d 244 (2011) (citing *Ellis v. City of Seattle*, 12 Wn.2d

26   450, 459, 13 P.3d 1065 (2000)). The Washington Supreme Court has emphasized that

27   courts should "proceed cautiously" with tort of wrongful discharge cases. *Id.* at 530.

28   ORDER – 17

The City argues that, because other applicable laws—namely, the WLAD—provide adequate remedies, Plaintiff's claims must fail. This Court agrees. The *Cudney* court held that the "jeopardy element" requires that the tort of wrongful discharge in violation of public policy be precluded "unless the public policy is inadequately promoted through other means" in order to maintain a "narrow" exception to the underlying doctrine of at-will employment. 172 Wn.2d at 530. The WLAD, a law that "requires liberal construction in order to accomplish the purposes of the law," *Marquis v. City of Spokane*, 130 Wn.2d 94, 108, 922 P.2d 43 (1996), provides adequate protections against racial, religious, and age discrimination. *See also Korslund v. DynCorp Tri-Cities Services, Inc.*, 156 Wn.2d 168, 183, 125 P.3d 119 (2005) (finding that anti-discrimination and retaliation remedies available under the Energy Reorganization Act were sufficient to adequately protect policy such that a tort claim was unnecessary). The City's request for summary judgment as to Plaintiff's public policy tort claims is **GRANTED**.

### D.) Constitutional Claim (Tenth Cause of Action)

The City seeks dismissal of Plaintiff's cause of action for violation of Article I, Section 11 of the Washington State Constitution. Dkt. # 44 at 19. Plaintiff relies on Article I, Sections 7 and 11 of the Washington Constitution and Governor Inslee's August 20, 2021 COVID-19 vaccination requirement proclamation, which acknowledges disability and religious accommodations for workers of state agencies, in support of her argument that Plaintiff asserted a clear public policy in favor of adult persons having the fundamental right to control their own decisions relating to bodily autonomy and rendering of their own health care. *See* Proclamation 21-14.1[3]. Plaintiff further cites to RCW 70.122.010, the Natural Death Act, which provides that adult persons have the fundamental right to control decisions relating to their health care, including the decision to have life-sustaining treatment withheld or withdrawn in the case of a terminal or

---

[3] Available at: https://governor.wa.gov/sites/default/files/proclamations/21-14.1%20-%20COVID-19%20Vax%20Washington%20Amendment.pdf.

ORDER – 18

permanent unconscious condition.

Article I, Section 7 provides that "no person shall be disturbed in his private affairs, or his home invaded without authority of law." Wa. Const. Art. I § 7. Section 11 provides for "[a]bsolute freedom of conscience in all matters of religious sentiment, belief and worship…" Wa. Const. Art. I § 11. Section 11 further provides that "the liberty of conscience hereby secured shall not be so construed as to… justify practices inconsistent with the peace and safety of the state." *Id.* Here, there is no material issue of fact that the City's termination of Plaintiff due to her refusal to be vaccinated violates Article I, Section 7 or 11 of the Washington Constitution.

Plaintiff's reliance on *McNabb v. Department of Corrections*, 163 Wn.2d 393, 180 P.3d 1257 (2008) is inapposite. In *McNabb,* the Supreme Court of Washington found that the State's interest in the preservation of life, prevention of suicide, orderly administration of the prison system, and maintenance of the ethical integrity of the medical profession outweighed the limited right of Plaintiff McNabb, a prisoner, to refuse artificial means of nutrition and hydration. Plaintiff fails to explain how *McNabb* supports her position, especially considering that Plaintiff has not been forced to take the COVID-19 vaccine. Plaintiff's "freedom to believe remains absolute;" however, "the conduct of [Plaintiff] is subject to regulation for the protection of others." *State ex rel. Holcomb v. Armstrong*, 39 Wn.2d 860, 864, 239 P.2d 545 (1952). The City's request for summary judgment as to Plaintiff's constitutional claim is **GRANTED**.

**E.) Motion to Exclude Witness Testimony (Dkt. # 47)**

The City seeks an order excluding expert witness testimony from Plaintiff.  Dkt. # 47. Plaintiff did not respond to this motion, which may be considered by the Court as an admission that the motion has merit. *See* LCR 7(b)(2). This Court's April 25, 2023 scheduling order provided that expert witnesses were to be disclosed by January 31, 2024 and motions challenging expert witness testimony were due by April 30, 2024. Dkt. # 19. Plaintiff served the City with Rule 26 initial disclosures on May 19, 2023, indicating that

ORDER – 19

Plaintiff would likely retain a standard of care and damages expert. Dkt. # 48, Ex. A. However, Plaintiff did not identify or disclose any expert by the deadline imposed by this Court's pre-trial scheduling order.

The Rules provide that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence… at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Because Plaintiff has not served the City with expert witness disclosures by the deadline set forth in this Court's scheduling order, the City's motion is **GRANTED** and Plaintiff is excluded from presenting expert witness testimony.

## V.      CONCLUSION

For the foregoing reasons, this Court **GRANTS** the City's motion for summary judgment (Dkt. # 44) and motion to exclude expert witness testimony (Dkt. # 47). The Clerk is directed to enter judgment in favor of the City and against Plaintiff.

DATED this 28th day of June, 2024.

The Honorable Richard A. Jones
United States District Judge

ORDER – 20